IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FORUM US, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:20-cv-00150 |
| | § | |
| ODESSA SEPARATOR, INC. | § | |
| | § | JURY TRIAL DEMANDED |
| Defendant. | § | |

**PLAINTIFF FORUM US, INC.'S ORIGINAL COMPLAINT**

Plaintiff Forum US, Inc. (collectively, "Plaintiff" or "Forum") complains and alleges as follows against Defendant Odessa Separator, Inc. ("Defendant" or "OSI"):

## I. PARTIES

1. Plaintiff Forum US, Inc. ("Forum") is a corporation organized under the laws of the State of Delaware with its principal place of business at 10344 Sam Houston Park Dr., Suite 300, Houston, Texas 77064-4666.

2. Defendant Odessa Separator, Inc. is a Texas corporation, created and existing under and by virtue of the laws of Texas and registered to do business in the State of Texas. Defendant OSI may be served through its Texas registered agent for service of process: Cavin B. Frost, c/o Odessa Separator Inc., 1612 S Viceroy Ave, Odessa, Texas 79763.

## II. JURISDICTION AND VENUE

3. This Complaint includes claims for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338.

4. Defendant OSI is subject to personal jurisdiction due to its contacts with the State of Texas, and in particular with the Western District of Texas. OSI regularly transacts business within this district, including at its headquarters at 1001 Pearl St., Odessa, Texas 79763.

5. Defendant OSI has committed acts of infringement in this district, including but not limited to manufacturing, selling and offering to sell infringing products in this district.

6. Venue is proper pursuant to 28 U.S.C. §§1391(b)-(c) and 28 U.S.C. § 1400(b).

### III. FORUM'S REVOLUTIONARY SANDGUARD™ TECHNOLOGY

7. Forum is a provider of well services and products that enhance the abilities of artificial lift systems in the oil and gas industry, such as downhole pumps. One such product is marketed as the SandGuard™, a tool that revolutionized sand management for wells using downhole pumps.

8. Prior to the invention of the SandGuard™ technology, sand buildup was a serious problem for operators and service providers in shale formations. Shale wells are primary candidates for multi-zone fracking, which is the process of high-pressure injection of "fracking fluid" into multiple sections or zones of a well. This creates cracks in the formation that make it easier for the oil in the formation to escape from the fracked production zones. The fracking fluid contains sand or other solid particles called "proppants," which quite literally prop the fractures in the formation open. While most wells include some amounts of proppant, shale wells include significant amounts of injected proppant due to the number of producing zones in their long lateral sections. Injected sand can create major problems for a downhole pump during the production phase of a shale well, as explained in reference to Figures 1A to 1C below.



**FIG. 1A**
**(Normal Pumping)**

**FIG. 1B**
**(Pump Shutdown)**

**FIG. 1C**
**(Pump Restart)**

9. As shown in **Figure 1A**, during the production phase a downhole pump is used to pump fluid out of a well through production tubing. The pump creates enough pressure to carry the fluid and solid particles to the surface, where the wellhead and other surface equipment resides. In a perfect world, the downhole pump would not shut down until production of fluids from the well is complete. In the less-than-perfect real world, downhole pumps shut down several times over the life of a well for any number of reasons. For example, an electrical power outage (storms or downed power lines) is one possible reason a pump may shut down.

10. As shown in **Figure 1B**, when a shutdown occurs the fluid and solid particles (e.g., proppant injected during the fracking phase) that are in the production tubular begin to flow downwardly by gravity towards the pump, until the fluid level equalizes. When the fluid stops flowing, the solid particles in the fluid continue to flow downwardly by gravity through the fluid

3

toward the pump. These particles begin to accumulate on or in the pump, building up until they form a plug.

11. As shown in **Figure 1C**, when the pump starts up again it operates at higher flowrate and lower pressure as it attempts to clear the solid plug that has formed. Sometimes, the pump can clear the plug and normal operations resume for a time. However, the burden of clearing the plug puts unwanted strain on the pump, which may greatly reduce the lifespan of the pump. Other times, the pump is unable to clear the plug and the pump fails.

12. If the pump fails to clear the plug, the remedial costs can be enormous. A cost that will always occur is the cost of having to stop production to address the plug, *i.e.*, lost production time. Additionally, there is the added cost of running fishing tools down to flush out the plug, removing a failed pump, and/or buying and installing a new pump. All these scenarios have the added expense associated with production downtime, such as having to physically dispatch employees and heavy-duty equipment to the well site to actually fix the problem(s). In the event of a pump failure, the cost of replacing the pump can run into the hundreds of thousands of dollars when all costs are considered. For these reasons, well operators consider sand plugging a serious problem that they desperately try to avoid.

13. Forum's SandGuard™ solves the sand plug problems described above. As shown in **Figure 2** below, the SandGuard™ is assembled into the production string of a well, above a pump. The SandGuard™ has (1) a body in the form of an outer tubing or housing; (2) an upper and lower opening; (3) a first flow path in a vented inner tubular; (4) a second flow path in an annular space around the inner tubular; and (5) a flow diverter.



**FIG. 2**

The operation of the SandGuard is explained in reference to **Figures 3A** to **3C** below.



| **FIG. 3A** | **FIG. 3B** | **FIG. 3C** |
| (Normal Pumping) | (Pump Shutdown) | (Pump Restart) |

14. During normal pumping operation (**Figure 3A**), fluid and entrained sand flow upwardly into a lower opening of the SandGuard. The upward flow then splits into two flow paths. The first flow path is through the inner tubular with a flow diverter (in the form of a ball valve) at the top. The second flow path is through the annular space surrounding the inner tubular.

15. When the pump shuts down (**Figure 3B**), the fluid and entrained solids begin to flow downwardly through the production tubing by gravity. The solids are diverted into the second flow path by the flow diverter, which closes when the pump is shut down because of the absence

of upward flow. This prevents solids from collecting in the first flow path and on the pump, and instead allows them to collect in the second flow path. The vents or slots in the inner tubular help filter the sand by preventing the sand from entering the first flow path from the second flow path and by causing the sand to collect in the annular space.

16. When the pump restarts (**Figure 3C**), the upward flow through the first flow path induces flow in the second flow path through the small vents in the inner tubular. This induced flow, as well as the flow out of the top of the first flow path around the diverter, helps progressively carry solid particles out of the second flow path and out of the top of the tool. In this way, the SandGuard™ prevents solids from collecting on the downhole pump and ingeniously allows for self-cleaning so that the SandGuard can be used for an unlimited number of shutdowns.

17. The SandGuard™ is covered by several United States Patents, which are discussed below.

## IV. FORUM'S PATENTS

18. United States Patent No. 9,441,435 ("the '435 Patent") entitled "Downhole Apparatus and Method" issued on September 13, 2016 after fair and full examination by the United States Patent and Trademark Office ("Patent Office"). A true and correct copy of the '435 Patent is attached hereto as **Exhibit A**.

19. United States Patent No. 10,132,151 ("the '151 Patent") entitled "Downhole Apparatus and Method" issued on November 20, 2018 after fair and full examination by the Patent Office. A true and correct copy of the '151 Patent is attached hereto as **Exhibit B.**

20. United States Patent No. 10,132,152 ("the '152 Patent") entitled "Downhole Apparatus and Method" issued on November 20, 2018 after fair and full examination by the Patent Office. A true and correct copy of the '152 Patent is attached hereto as **Exhibit C**.

21. Forum is the sole owner of the '435, '151 and '152 Patents (collectively, "Patents-in-Suit").

22. No other entity is licensed under the Patents-in-Suit, which means Forum is the only entity in the United States with the right to make, use, sell/rent, offer for sale/rent, or import any product, or to practice any method, embodying the inventions of the Patents-in-Suit.

23. The structure and use of the SandGuard™ is covered by claims in each of the Patents-in-Suit.

24. At all relevant times, Forum has marked the SandGuard™ pursuant to 35 U.S.C. § 287.

## V. DEFENDANT OSI'S INFRINGEMENT

25. Defendant OSI manufactures, uses, sells and offers for sale a product line it calls the ESP Sand Lift™ (hereinafter "Accused Product"), including but not limited to at least the Series 350, Series 400, Series 450 and Series 550. As of February 19, 2020, the Accused Product was being prominently advertised as a "New Product" on the homepage of OSI's website (http://www.odessaseparator.com), as shown below. A true and correct copy of that page as publicly available on February 19, 2020 is attached hereto as **Exhibit D.**



26. As of February 19, 2020, the OSI website included a product page specific to the Accused Product (https://www.odessaseparator.com/esp-sand-lift), which purports to show its structure and step-by-step operation. A true and correct copy of that page as publicly available on February 19, 2020 is attached hereto as **Exhibit E**. That same product page provides a download link to a marketing brochure for the Accused Product, which also depicts its purported structure and step-by-step operation. A true and correct copy of that marketing brochure downloaded on

9

February 19, 2020 is attached hereto as **Exhibit F**. The step-by-step depiction from the webpage has been reproduced below:



**(A)**    **(B)**    **(C)**    **(D)**    **(E)**    **(F)**    **(G)**

**FIG. 4**

27. The Accused Product is adapted to prevent downward flowing sand from plugging a pump when the pump is shut down and allow for self-cleaning upon pump restart.

28. The Accused Product accomplishes this by redirecting downward flowing solid particles, such as sand, into a second flow path (or annular space), as shown in **Figure 4(A)-(C).** The collected solids are isolated from the pump, which is beneath the Accused Product, thereby preventing the solids from plugging or otherwise substantially impeding the pump upon restart.

29. As shown in **Figure 4(D)-(G)**, when the pump starts up again, the upward flow of fluid through a first flow path (or inner tubular) induces flow in the second flow path (or annular space) via vents in the inner tubular wall, which help carry the collected solid particles out of the second flow path. This allows the tool to self-clean so that it can collect solids during the next pump shutdown.

30. The structure and operation of the Accused Product results in infringement of each of the Patents-in-Suit. As non-limiting examples: (A) OSI infringes claims 1 and 18 of the '435 Patent as illustrated in **Exhibit G**; (B) OSI infringes claims 1 and 37 of the '151 Patent as illustrated in **Exhibit H**; (C) OSI infringes claims 1 and 29 of the '152 Patent, as illustrated in **Exhibit I**.

### VI. CAUSES OF ACTION

#### COUNT 1
#### (INFRINGEMENT OF U.S. PATENT NO. 9,441,435)

31. Forum re-alleges the facts recited in Paragraphs 1 through 30, inclusive, as if fully set forth herein.

32. The '435 Patent is valid and is presumed valid under 35 U.S.C. § 282.

33. OSI is not licensed under the '435 Patent.

34. OSI infringes, and has infringed, literally or under the doctrine of equivalents, one or more claims of the '435 Patent by importing, making, using, offering to sell/rent and/or selling/renting the Accused Products.

35. Forum is suffering irreparable harm from OSI's infringement of the '435 Patent. Forum has no adequate remedy at law and is entitled to an injunction against OSI's continuing infringement of the '435 Patent.

36. Forum has suffered, and will continue to suffer, monetary damages as a result of OSI's infringement of the '435 Patent. Each sale or rental of the Accused Product displaces Forum's sales of its patented SandGuard™ and, therefore, Forum is entitled to lost profits or at minimum a reasonable royalty.

## COUNT 2
### (INFRINGEMENT OF U.S. PATENT NO. 10,132,151)

37. Forum re-alleges the facts recited in Paragraphs 1 through 36, inclusive, as if fully set forth herein.

38. The '151 Patent is valid and is presumed valid under 35 U.S.C. § 282.

39. OSI is not licensed under the '151 Patent.

40. OSI infringes, and has infringed, literally or under the doctrine of equivalents, one or more claims of the '151 Patent by importing, making, using, offering to sell/rent and/or selling/renting the Accused Products.

41. Forum is suffering irreparable harm from OSI's infringement of the '151 Patent. Forum has no adequate remedy at law and is entitled to an injunction against OSI's continuing infringement of the '151 Patent.

42. Forum has suffered, and will continue to suffer, monetary damages as a result of OSI's infringement of the '151 Patent. Each sale or rental of the Accused Product displaces

Forum's sales of its patented SandGuard™ and, therefore, Forum is entitled to lost profits or at minimum a reasonable royalty.

## COUNT 3
### (INFRINGEMENT OF U.S. PATENT NO. 10,132,152)

43. Forum re-alleges the facts recited in Paragraphs 1 through 42, inclusive, as if fully set forth herein.

44. The '152 Patent is valid and is presumed valid under 35 U.S.C. § 282.

45. OSI is not licensed under the '152 Patent.

46. OSI infringes, and has infringed, literally or under the doctrine of equivalents, one or more claims of the '152 Patent by importing, making, using, offering to sell/rent and/or selling/renting the Accused Products.

47. Forum is suffering irreparable harm from OSI's infringement of the '152 Patent. Forum has no adequate remedy at law and is entitled to an injunction against OSI's continuing infringement of the '152 Patent.

48. Forum has suffered, and will continue to suffer, monetary damages as a result of OSI's infringement of the '152 Patent. Each sale or rental of the Accused Product displaces Forum's sales of its patented SandGuard™ and, therefore, Forum is entitled to lost profits or at minimum a reasonable royalty.

### VII. JURY DEMAND

49. Forum asserts its right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

# **PRAYER FOR RELIEF**

Forum prays for the following relief:

a. A judgment that Defendant OSI has infringed all Patents-in-Suit under all applicable provisions of Title 35, United States Code;

b. An award of damages adequate to compensate Forum for OSI's infringement and in no event less than a reasonable royalty, together with prejudgment interest;

c. A permanent injunction prohibiting further infringement of the Patents-in-Suit;

d. Such other relief as this Court or a jury may deem proper and just, including but not limited to a finding of exceptional case or willful infringement should the evidence ultimately support such a finding.

February 26, 2020

Respectfully submitted,

*/s/ William C. Slusser*
William C. Slusser
*Attorney-in-Charge*
Texas Bar No. 18514500
**Norton, Rose, Fulbright US LLP**
Fulbright Tower
1301 McKinney Street, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5500
Facsimile: (713) 651-5246
bill.slusser@nortonrosefulbright.com

J. David Cabello
Texas Bar No. 03574500
Stephen D. Zinda
Texas Bar No. 24084147
**Cabello Hall Zinda, PLLC**
801 Travis Street, Suite 1610
Houston, TX 77002

Telephone: (832) 631-9990
Facsimile: (832) 631-9991
David@CHZFirm.com
Stephen@CHZFirm.com

**ATTORNEYS FOR PLAINTIFF
FORUM US, INC.**